Good late morning. If I can please reserve two minutes for rebuttal. Yes, certainly. And may it please the court and counsel, my name is George Colon. I'm representing the appellant, Appellant Thornton, and this matter is here on appeal of a grant of summary judgment that was issued by the Yakima District Court for the Eastern District. And I, in a nutshell, the appellant, after serving in Vietnam, he became involved in law enforcement, and in 1993 he came down with leukemia. That followed with treatment, eventually with a bone marrow transplant. That, of course, he no longer worked for the Golden Ale Police Department after that. During some time while he was going through these matters, in 1990, I believe, the appellant Hill was hired by the city of Goldendale, and the appellant, part of his duties was to do background checks. Mr. Thornton, the appellant, was not satisfied. After he came back from the bone marrow transplant, he was getting complaints, so he did his own investigation. This was after he no longer had the official capacity of chief of police. He asked the city of Connell, Washington, and they provided him a copy of an internal affairs report that was conducted by the Washington State Patrol on conduct unbecoming of an officer. The subject of it was, of course, Lieutenant Hill at the time, who is now chief of police and still is in Goldendale, Washington. You know, Hans, this is a case with a lot of unusual facts, which I think we're all familiar with. We've read it. It really comes down to, on the malicious prosecution claim, whether there are disputed issues of fact that preclude summary judgment. Then there on the other claims is a statute of limitations question. Yes, sir. I think that there's also a question of a qualified immunity on the retaliation claim, but basically isn't your argument on the malicious prosecution claim that there are disputed issues of fact? Yes, Your Honor. That is a contention, not only in the pleadings, but as well as with affidavits that were supplied in support of the response to the appellee's motion for summary judgment. And what else do you see as a serious issue that you need to discuss with us? I received a notice from an appellee counsel, Scott Beyer, present at Carambie City of Burbank. And I read it, and it's almost a parallel with this case as far as the actions there. The analysis in Carambie gives a good light on whether or not there was a seizure in Carambie's case. Applying that to the appellant's case, he was facing felony charges. He was booked. He was fingerprinted. He was photographed. He had to sign a waiver of extradition before he would be released out of custody. And comparing that to what Karen was facing, she was facing two misdemeanors, and all she had to do was appear in court. So in this case, Your Honor, there was a seizure. And the concern I have is the link between the protected activity being critical, exposing what in the appellant's mind was questionable personnel, in this case Mr. Hill, and the retaliation that followed. And there was about an 11-month period in between his publication of the report to the prosecutor's office, to the city council, of which the prosecutor, Grundy, was both a deputy prosecutor as well as a councilwoman of the city of Coldendale at the time. A lot of people, it became common knowledge. And these series of retaliations followed. I believe that under R.K. Ventures v. City of Seattle, even though the district court discounted all those other allegations, running him down, taking his driving privileges temporarily and whatnot, should at least have been considered by the district court in establishing that there was an underlying motivation, which was part of the whole scheme of payback. I'm from a small county of 10,000 people in Skamania County, and I know how things happen in small towns. And Klickitat has a little more, just under 20,000, but it's still pretty small. And people know what's going on and stand at a line and it comes down. So, yes, and I believe under Hedbie Humphrey, the retaliations complained of, it would have been awkward to allow the appellant to file lawsuits during the pendency of the prosecution against him for all these charges. Well, charges, yes. CLASB felonies. Ten years in prison, I believe, and $20,000 fine. And it's just, that is the link. And I believe that Karam cited, in fact, to a case out of California, Teaser v. Sacramento City Unified School District, which I believe the three different things that are looked at on page 744 and 745 of the Teaser opinion, that the appellant pretty much establishes that with the affidavits that were supplied in support of this response to the Motion of Preserving Judgment. It's not like in Karam, where Karam could only make bare allegations that reports were floating around in City Hall. It was a little, a lot more extreme, in fact. The appellant has what Teaser didn't have, and that's the affidavit from the Carmona, who's a former Goldendale Police Department officer, who described Appellee Hill as crying of anger over the distribution of the Internal Affairs report and basically getting all of the officers to harass the appellant, follow him, cite him for anything. There's a great contradiction of the disputed facts in this case, and I ask Your Honors to remand it for trial. Thank you. Thank you. Good morning. My name is Scott Beyer, and I represent all the defendants in this matter, with the exception of Gwendolyn Grundy. Mr. Buehler represents Ms. Grundy. Mr. Buehler has agreed to allow me about 15 minutes to respond, and I hope to allow him about five minutes of my remaining time. I'd like to address the following three issues which have been suggested to us by the court. The first one having to do with whether or not Mr. Thornton's allegations of retaliation for exercising his First Amendment rights, alleged First Amendment rights, are barred by the statute of limitations. The second one is even if his allegations of retaliation survive the statute of limitations analysis, did he present any competent evidence of a connection between his alleged free speech and his prosecution for assault? And then thirdly, whether the county prosecutor's decision to prosecute and the county judge's finding of probable cause broke any causal connection between the officer's actions and the charges of assault brought against Mr. Thornton. The court's reasoning in Heck, We Urge does not toll the statute of limitations under the facts of this case. There's no dispute that all the actions complained of by Mr. Thornton occurred more than three years before he filed his action. Mr. Thornton urges that his claims pursuant to Section 1983 would necessarily imply the invalidity of any conviction that might have resulted from the assault charges. Reviewing the wrongs allegedly committed by city employees or officials, we can see that none of them would necessarily imply the invalidity of a conviction for assault. Mr. Thornton says he was wronged by Lieutenant Hill and his wife when they sought and obtained protective orders against him. Apart from the fact that there was no action under color of law and also apart from the fact that these orders were granted, they were not appealed from, had he run an action based upon those protective orders, that would not have necessarily implied the invalidity of charges that resulted from events that occurred seven to eight months later. In other words, if Mr. Thornton had sued the Hills, claiming that they were acting under color of law when they obtained these protective orders, such an action would not have implied the invalidity of his, of a conviction that could have resulted from the assault charges resulting from the standoff. In the same time frame of seven to eight months prior to the standoff at his home, Mr. Thornton was charged by Deputy Cliquetet Prosecuting Attorney Grundy with felony harassment and fourth degree assault. Now these were charges that occurred in, were brought in May of 1997, some seven to eight months prior to the subsequent assault charges. These charges actually resulted from Mr. Thornton's threats to kill medical personnel attending him after he was found unconscious. The charges resulted in a deferred prosecution. The deferral was conditioned upon Mr. Thornton obtaining counseling to address his confrontational behavior. He was also required not to have any confrontations in which there were physical or verbal threats of violence against others. With respect to these charges that were brought against him and resulted in deferred prosecution, had he brought a case based upon, 1983 claim based upon, those facts, certainly that would have not logically implied any validity to the later assault charges. Mr. Thornton also claims, without providing any competent evidence, that it was the Goldendale Police Department that tried to have him committed in August of 1997. In fact, the evidence indicates that Mr. Thornton was referred to the Klickitech County Mental Health Center by a county deputy and by an ambulance crew chief. This referral occurred, again, as a result of Mr. Thornton's threatening conduct at the fairgrounds in Klickitech County. There is absolutely no connection to the city that is brought out in any evidence that was presented, and certainly had he brought a claim based upon some speculation that somehow the city of Goldendale was behind it or that Lieutenant Hill was behind it, that certainly would not have necessarily implied the invalidity of a conviction. In October of 1997, Chief Hampshire, not Lieutenant Hill, asked Officer Stone to report to the Department of Licensing two occasions in which Mr. Thornton had been found unconscious. Mr. Thornton, of course, alleges, speculates that this was in retaliation for his exercise of free speech. Again, had he brought a Section 1983 action on those facts, it certainly wouldn't have inferred the invalidity of a conviction related to the later standoff. Now finally, with regard to the standoff, Mr. Thornton does not deny that these events were initiated by Mr. Thornton going to the police department in February 1998 to report that he'd been assaulted, nor does he deny that before he could be interviewed by the Goldendale Police Department or by an officer of the department, he simply left. It's also undenied that Chief Hampshire directed two officers, Officers Cayley and Berry, to the Thornton home to investigate his complaint and also to investigate a complaint of loud music. The officers' reports of what occurred after they arrived at the house were part of the evidence considered by Prosecutor Grundy. Mr. Thornton claimed that the officers' reports were knowingly false. I assume that is the claim that's now being made, is that they knew these reports were false at the time they made them. And he says that because he says he saw them approached with their guns at their sides rather than in their holsters. He also says they knowingly falsified the reports when they reported that they saw him point a gun at them. Mr. Thornton says their revolvers were out and at their sides. He also denies that he pointed a gun at Officer Cayley or Chief Hampshire. But he doesn't deny that he had a gun. In fact, he says in one statement in rebuttal to the reports of the officers that his wife was not blocking his shot if he had wanted to take aim. He also does not deny that Officer Cayley ordered him to drop his gun. Now, both Heck and Cabrera, the Heck and Cabrera cases, address allegations of this type. In Heck, the court said that a suit for damage is attributable to an allegedly unreasonable search, may lie even if the challenged search produced evidence that was entered in a state criminal proceeding resulting in the plaintiff's still outstanding conviction. Now, that was a case where there still was an outstanding conviction. The court said such a suit would not necessarily imply that the conviction was unlawful. Likewise, in Cabrera, the court said that a claim that the defendants created false and misleading reports on an incident accrued at least by the time of the plaintiff's, the plaintiff's criminal trial began. Counsel, doesn't Heck apply here, doesn't Heck apply here to bar any claim that the statute of limitations, say the statute of limitations does not apply to cases of malicious prosecution? The claim here is that these officers falsified their reports. The claim is that they knew them to be false and that they presented those false reports in retaliation because of past exercise of criticism of the city. There's no connection between, there's no knowledge shown that these officers were aware of his political activities. But that's the claim. And I believe the Cabrera case also involved allegations of false reports on an incident. In that case, the court said that the cause of action would have at least accrued at the time of the beginning of the trial in that particular case. Now, in this case, the officers' reports would have been available at the time of the probable cause hearing that occurred even much before the trial. So based on the Cabrera case, I would say that cause of action would have accrued at least at the time of the probable cause hearing, and certainly under Cabrera saying it would have accrued at the time of the beginning of the trial, which would have still be beyond the statute of limitations. So you're saying it applies even in this case of a claim of malicious prosecution? I believe it would apply to a claim based upon a claim that the officers knowingly falsified their reports in this case. I think it's important to remember, and I'll try to address that, that in this case, the prosecution was by another governmental authority, the county. The claim here really is that the officers somehow knowingly falsified the reports when, in fact, I think the facts show that Mr. Thornton wants to rely upon what he believes the officers' perception of events were. He wants to say that I didn't take aim at anyone. Therefore, how could anyone have perceived that I could have been pointing a gun at them? He wants to draw a very thin line between what the officers may have perceived as far as there's an individual armed with a gun and there's an individual who has been ordered to drop the gun and who still persists in maintaining the standoff that resulted in numerous other law enforcement people coming to the scene. But what if his claims are true? What if it's true that he never raised the weapon at the police and they charged him with guns drawn? Therefore, he claims there was no probable cause. Don't we have material questions of that that need to be resolved here and that should survive some re-judgment? Well, apart from the fact that I don't see that there's any causal connection between what Mr. Thornton alleges to be free speech, but getting to that issue. Isn't what a probable cause an essential element of a claim for a malicious prosecution? A lack of probable cause would be. And in this case, the officers' reports were not the only thing that supplied probable cause. And in addition to that, similar to the Karam case that we did cite, a case that came out after a brief was filed, in that case, actually, there was a finding by the court that the officer had, I don't know that it was stated that it was knowingly false, but it was found that the officer in his report that was relied upon in the case had actually misstated facts of the case, I believe having to do with whether or not the defendant in that case, the criminal defendant, had admitted that she had disobeyed an order. So in that case, we did have a very clear finding that the officer's report was incorrect, and which actually resulted in the case being dismissed. But this disputed question of fact about probable cause seems to me would be very material to Thornton's claim that the criminal charges were fabricated and that the prosecution was malicious. Were they not? Well, I guess what we're going to have in that case is every case that ends up in an acquittal will result in, if the plaintiff simply denies all the facts that were contained in the officer's reports, officer's reports that only were part of the decision for probable cause, as the prosecutor indicated in this case. The prosecutor indicated in this case that she did review the reports. She also interviewed city and county officers who were at the scene. I can't recall whether she indicated she interviewed other bystanders. But without any finding that these officer's reports were knowingly false, without any evidence of that, between the officers who acted in this case and Mr. Thornton. In this case, of course, there was no criticism of these officers by Mr. Thornton. There's no evidence that these officers even knew of his prior political activities. There's no evidence that any of the alleged actors in this case, that being Mayor Sigfrinius and Lieutenant Hill, that they, in any respect, directed these officers to the scene. In fact, in this case, we see that these events were really put in motion by Mr. Thornton's own actions in going to the police department to make a report of an assault. You're down to your five minutes if you want to leave them to your co-counsel. You're very correct. Thank you very much. Thank you. May it please the Court, opposing counsel, my name is John Bueller. I'm from the Eastern District of Washington, and I'm representing Gwendolyn Grundy. And I would briefly like to discuss two issues with respect to only appellee Grundy. And that would be first, number one would be procedural. And that would involve when the statute of limitations in this case, when the cause of action began to approve with respect to Mr. Thornton's claims against her. And second would be the substantive issues. And those would include the nature of the cause of action that he has brought against my client, and what, if any, immunity that she is afforded by virtue of her status as the prosecutor. With respect to the accrual of the claim, as a beginning point, it's necessary to identify the specific claim that's been made against her. And although in my materials, in Judge Succo's decision, and in the appellant's brief, malicious prosecution is discussed, a close reading of the record shows that that is not, in fact, what was played. The record shows that the appellant's only claim against defendant, or excuse me, appellee Grundy is found on page 17, which is the evidence record, page 708, where they say that appellee Grundy engaged in deliberate and malicious deprivation or conspiracy to deprive the plaintiff of freedom of speech and liberty. So we either have a conspiracy or we have a deprivation. But it never says specifically that this was based on malicious prosecution as affected her in her status as the prosecutor. And I don't know whether it's just because it was inarticulately phrased or whether that's something specific, but from our perspective, there were allegations of retaliation, but there were not allegations specifically in the complaint that there was malicious prosecution. As was discussed in our material and was discussed in Judge Succo's order, it's our position that, at least as it stands now, that the heck exception does not apply to this case because there has not been a decision out of this circuit that is part of a retaliation claim. Both retaliation and malicious prosecution must be shown in a retaliation claim. And we would submit that the heck exception did not apply, that the retaliation cause of action arose at the time prosecution was filed if there was such retaliation and facts to support it, and that it was time barred, the claim was time barred under the statute of limitations. Turning next to the substantive issues. Roberts. May I go back for a second? Go ahead. Going back to your brief, you've assumed as well, it appears, that the case was a retaliation case, is that right? I've got it. I mean, the problem, I mean, the district court has a finding. You've based that. And I appreciate your comments now that that's not what the claim is. Quite candidly, my concern was because it had been discussed in the previous brief, it had been discussed in the argument at the district court level, which I wasn't a part of, I did not want to come before this court and still not address that. No, I understand that. But, I mean, I think the logical conclusion is the district court got it wrong and we might have to send it back for reanalysis, which I don't think you particularly want. But assuming that it's a retaliation claim, just for the sake of argument, I don't quite understand why you think that heck doesn't, heck wouldn't be implicated here, because, in fact, if proven that it's a malicious prosecution claim, it can't or malicious prosecution type of retaliation claim, it really can't accrue until, in fact, there's acquittal, withdrawal, or whatever, right? I think Judge Succo was very adept in his decision. I think his decision was correct. But quite candidly, to an extent, I have to agree with your analysis, because I think before Judge Succo decided substantively, well, I don't have to get to the merits, because I find there's no facts to merit the claim and I'm going to grant summary judgment. My understanding of legal analysis is that we first have to decide whether there's a cause of action, whether it was brought within the appropriate statute of limitations. If yes, then we look at the merits. Not necessarily. It depends on, you know, you can have an alternative basis for finding. I think what Judge Succo was saying. I mean, my point is, if he had reached the contrary, I mean, if this case were up for different circumstances, I think he'd be saying, heck, you know, heck, bars this claim. And if the claim had been brought and the district court allowed the claim to be brought while the criminal charges were still pending. Or after a conviction. As I look at the difference between the Fifth and the Eleventh Circuit cases in the Keenan and the Dahl case, and Judge Succo's analysis of that in terms of where we're at in the Ninth Circuit, I believe that is, when we're looking at retaliation, I think there is an issue. Is it retaliation and the elements of retaliation? Or do you also have to show in a retaliation the malicious prosecution? Which, heck says under the malicious prosecution, my reading of it is that the cause of action would not accrue until after you were found not to have committed the offense and you were acquitted of it and the criminal case was over. So I will concede that. My concern is, once we get into the substantive issues, however, that there were no facts to show that Appelli Grundy was involved in the conspiracy, was involved in anything other than acting as a prosecutor. She did not do the investigation on her own. She looked at the officer's reports and filed the charges. And according to the applicable standards for prosecutorial immunity, and I've discussed that both in an individual capacity because she's been named with her marital community, I'm assuming it's an individual and in her public capacity, that she enjoys that prosecutorial immunity such that there's been no factual showing. There was a vague conversation that took place in the courtroom, but there were no facts, underlying facts. There was no factual dispute whatsoever or facts presented to show that she in any way did anything wrong other than read the police reports and make a decision to file the charges based on what the officer said or that she was in collusion with them. And is it true that the officers who prepared the reports were not defendants in this case? Or are they? Have I got that incorrect? I don't recall whether Hill and the other individuals. Were there two officers? Who were the two officers on which she filed the reports? I apologize. I don't recall. It's in the record and it was in the declaration of Gwendolyn Grundy, which was made part of the evidence record. Okay. Thank you, counsel. Thank you. I'm going to need to be able to clarify that for you. That's okay. You can probably clarify it for me as well. Okay. It says I have 12 minutes. Yeah, but I wouldn't take that literally. We'll give you a couple of minutes for rebuttal. I can't cite exactly to where on the page, but it is in the records and I submitted those. It's in one of those three volumes. I believe it's in volume one. The whole instigation on February 27th of 1998 was when the appellant was being accosted by Lieutenant Hills' stepson and that's documented in the police reports. He went down to the Goldendale Police Department and I believe that the lady at the front counter was going to, I think it says that she told the appellant that she was going to go get Mathena, Officer Mathena, who happens to be a former Connell Police Department officer and a friend of Appellant Hills. So it's quite a tight rope there. My understanding is that being a counsel person as well as a deputy prosecutor, Appellant Grundy never offered her knowledge of the facts, the background facts, to the trial court for the findings of probable cause. That, among the other facts where the two officers, city officers, Caylee and Berry are their names, and their renditions of the facts, they pretty much claim that Lieutenant Hill never told them to give retributions to the appellant and that their side arms were holstered, which contradicts what the appellant stated happened. He was there. So Caylee and Berry were the two officers who made the reports? Yes, Your Honor. And they are in the... And they did. Okay. May I ask about... Yes. Prosecutor Grundy, why wasn't she simply acting in her role as an advocate? My understanding, Your Honor, is that eventually at some point at the trial level, the office, the Klicktec County Prosecutor's Office, was replaced by a Benton County prosecutor to handle the case. So at some point, they were off the case. The question Judge Nelson is asking you is what evidence is there that she did anything wrong herself other than prosecute on the basis of the reports she received? She was in pretty good honor of the background information, the Internal Affairs Report. She was a council person. And by then, well before the standoff incident, everybody pretty much knew about it. It was common knowledge in the city of Goldendale. And I... You mean it was like a conspiracy in which she was a part or she withheld facts that she knew? I'm trying to... A prosecutor has to go in and prosecute vigorously. Yes. What did she do that was wrong? Ethically, it's a borderline. I don't think she committed unethical conduct. But it's borderline. I believe there might be an opinion at the disciplinary council levels that they're allowed to have those positions. But in this case, if she never knew about the background between the parties, then great. But she was... Everybody in town knows about the background of the parties, don't they? It was a small... Small town. A nice-sized town in my view, but... Yeah, I mean it's... So how do you... If that's true, then you're saying that at any time that a prosecutor has some independent knowledge of the rumors around town that... And it turns out to be a prosecution that goes bust, that they're liable. Rumors are one thing. Here, she's a council person. Right. And here's the mayor, Secrinius, and Lieutenant Hill having closed-door meetings, probably a violation of the open public... Unless they were executive meetings, the open public laws in Washington State. And then it's just... The circumstances here are stronger than Karen's circumstances. She... Little reports that the council members would spread among themselves and read and do nothing about. Here, she was intimately involved in that group where this internal affairs report was... In fact, the appellant even gave the prosecuting attorney's office a copy of the report. That's in the affidavit as well. And he spoke with Newt Reif. He's no longer with the prosecutor's office in Klickitat County. But she knew about it. There's no question about it. And it's almost hard to, from my perspective, to continue on that case without saying, let's send it to an outside prosecutorial authority, which eventually did. Should have done, recused herself because of special knowledge? In my opinion, in this case, yes. What requires her to do that? I mean, you said it's borderline ethical, but you haven't pointed to a canon of ethics. And I thought quite to the contrary. She was supposed to prosecute to the best of her ability with the knowledge that she had. If you're saying she conspired to affect the evidence, that's another thing. By not providing it to the tribunal, to the superior court in Klickitat County, which had a visiting judge because the local judge recused himself already, that's how tight the community is down there. She hid evidence. That would be an ethical violation for sure. She didn't offer her knowledge of the Connell Internal Affairs report as part of the evidence that she gave to the superior court to determine probable cause. There is this history going on, and I do criminal defense as well, and from my perspective, give the court what you got and let the court make its own decision. Among all the other facts that were not provided from Caylee and Barry officers, this was also not provided to the court so it could make its own assessment. And if Your Honor reads those police reports, that's pretty hard stuff, and yet the jury did acquit, which shows that the jury wouldn't even bite into that hook. Okay. Thank you, counsel. Thank you, Your Honor. Case just arguably submitted. The final case of the morning is United States v. Jeacons.
judges: D Nelson, Reinhardt, Thomas